## Wolbert *versus* Fackler.

</div>

An attachment issued by a justice of the peace, under the Act of 12th July 1842, can only be levied on goods capable of manual seizure by the constable; the defendant's choses in action cannot be attached under that act.

The constable, in his return, must state specifically what he has attached, and the manner in which he has executed his writ.

ERROR to the District Court of *Philadelphia.*

This was an attachment execution issued on a judgment in favour of Louis F. Fackler against Lewis Muelter, and served on Henry P. Wolbert, as garnishee, on the 25th July 1857.

The parties agreed upon a case stated, in the nature of a special verdict, wherein the following facts were conceded:—On the 25th July 1857, the garnishee had in his hands a sum of money belonging to the defendant, Muelter, amounting to $150.20, the proceeds of a sale of the defendant's personal property, by the garnishee, as an auctioneer, and for his account.

On that day, an attachment was issued against the defendant by Alderman Butler, at the suit of Middleton & Brother, under the Act of 12th July 1842, and served on Wolbert as garnishee. To this writ, the constable made the following return:—"Attached

[Wolbert v. Fackler.]

defendant's goods, &c., in the hands of H. P. Wolbert, and served copy and inventory on Henry P. Wolbert, the person in whose possession the same were found, also served attachment, summons, and inventory on the defendant personally, July 20th 1857."

On the 24th July 1857, Middleton & Brother, the plaintiffs in this attachment, obtained judgment against the defendant for $82.

Like proceedings were had, at the same time, at the suit of Middleton & Hammond, who, on the same day, obtained a judgment against the defendant. And on executions issued upon these judgments, Wolbert, on the 24th August 1857, paid to the constable the amount of money in his hands, which was distributed *pro rata*, .between the attaching creditors before the alderman.

The court below gave judgment for the plaintiff on the case stated for $150.20 ; which was here assigned for error.

*B. H. Brewster*, for the plaintiff in error.

*Erety*, for the defendant in error.

The opinion of the court was delivered by

THOMPSON, J.—We are not called upon to discuss the regularity of the judgment of the justice, which forms the basis of the claim of the plaintiffs in error, but simply the effect of the attachment issued by him under the provision of the Act of 12th of July 1842, known as the act to abolish imprisonment for debt.

While it is conceded, that the act in question is remedial in its nature and purposes, and entitled to a liberal construction, still we are to remember that, so far as concerns that portion of it to be executed by aldermen and justices of the peace, it comes within limited jurisdictions beyond which there is no amplification by intendment: Camp v. Wood, 10 *Watts* 121.

The constable who served the attachment, returned, "Attached defendant's goods, &c., in the hands of H. P. Wolbert, and served copy and inventory on H. P. Wolbert, the person in whose hands the same were found, also served attachment, summons, and inventory, on the defendant personally, July 20th 1857." The defect in the form of this return is not before us, but it is manifestly so in not stating specifically what he had attached, as well as the manner in which he executed his writ, as required by the 20th section of the act.

It is conceded, that the property he attached was money in the hands of the garnishee. That he did not take possession of or see any money in his hands, and took no bond for its production, as required by the 29th section of the act. It was simply an effort to attach a debt due by the garnishee to the defendant.

The "property" intended by the act was not property in its

more extensive meaning, it did not include real interests, or incorporeal interests, but was defined by the act to be such as could be taken possession of by the officer, and could be removed, either at the moment of attaching it, or at a proper time thereafter ; and which he was required to remove, unless upon receiving security in double the amount of the plaintiff's claim, that the stipulator will pay the debt and costs, if the plaintiff shall recover, " at the expiration of the stay of execution given by law to freeholders, or that he will *surrender up the property attached*, to any officer having execution against him on any judgment recorded in such attachment." We must construe the act to mean, that the property to be attached was such as was liable to execution at the time of the passage of the act; and debts due at that time were, by no process of law known to the jurisdiction of aldermen and justices of the peace, liable to execution. Nor are they so yet, except by and through a process of attachment execution provided by the Act of 1845, and by process of domestic attachment. The act evidently meant such as might be seized on an ordinary execution—such as was capable of manual seizure, and of manual surrender by the defendant or his bail.

It was this species of property, subject to seizure and removal, that might, by the process mentioned in the act, be impounded to meet the claim of the plaintiff. While so impounded, it was in the custody of the law, and was not liable to other executions. So, if there were no service of a summons on the defendant, or appearance by him, the execution on the judgment could not go against any other property belonging to him. The whole scope of the act was, to hold such property as was liable to execution, to await the seizure on execution in case of a recovery by the plaintiff. It is not intended here to say, that money actually seized by the officer might not fall within the provisions of the act, but that a chose in action, incapable of manual seizure, or subject to satisfaction by ordinary process, is not. Justices and aldermen had no jurisdiction adequate to the application, by compulsory process, of such property to the satisfaction of demands. They possessed not the power to call the garnishees before them, or propound interrogatories to them, or enter judgment against them on proof, or admission of assets. This was conferred upon them by Act of the 15th of April 1845, after judgment. This is a process to satisfy judgments, not to compel appearance and impound property to await the result of litigation. And the special process for this species of sequestration of debts due, proves, beyond cavil, that the same thing was not to be accomplished by an ordinary execution. We are clearly of opinion, that the attachment did not hold the money due by Wolbert to the defendant. Nor would it have held the money, if actually seized, of which there is no pretence, for want of a return

indicating what was attached, and taking bond for its surrender in case of recovery by the plaintiff.

The payment, therefore, by Wolbert upon the executions from the justice, after the service of the execution attachment, was contrary to law, and if he has to pay the money a second time, it may be regretted but cannot be helped.

The judgment of the court below on the case stated is affirmed.